IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
OREGON PORTLAND DIVISION

| | |
|---|---|
| STAY FROSTY ENTERPRISES LLC, an Oregon Limited Liability Company,<br><br>      Plaintiff,<br><br>v.<br><br>AMAZON.COM INC., a Delaware Corporation; TEESPRING.COM INC., a Delaware Corporation; SUNFROG LLC, a Michigan Limited Liability Company, and SPREADSHIRT INC., a Delaware Corporation,<br><br>      Defendants. | Case No. 3:18-cv-00283-SB<br><br>**Memorandum in Support of Motion for Judgment on the Pleadings** |

James Edwin Bailey, III (922008)
Bailey & Yarmo LLP
Attorney for Plaintiff Stay Frosty Enterprises LLC
780 NW York Drive
Bend, OR 97701
541-317-9000
jbailey@byllp.com

David H. Madden (080396)
Mersenne Law
Attorney for Sunfrog LLC
9600 SW Oak Street, Ste. 500
Tigard, OR 97223
503-224-3745
dhm@mersenne.com

Anthony Weibell (238850)
Wilson Sonsini Goodrich & Rosati
Attorney for Teespring.com Inc.
701 Fifth Ave., Suite 5100
Seattle WA 98104
206-883-2500
tglass@wsgr.com

Robert T. Cruzen (080167)
Klarquist Sparkman, LLP
Attorneys for Defendant Amazon
One World Trade Center
121 SW Salmon Street, Ste. 1600
Portland, OR 97204
503-595-5300
rob.cruzen@klarquist.com

John A. Di Giacomo
Eric W. Misterovich
Revision Legal LLC
444 Cass Street, Ste. D
Traverse City, MI 49684
231-714-0100
john@rivisionlegal.com
eric@rivisionlegal.com

Casey M. Nokes (076641)
Cable Huston LLP
Attorney for Spreadshirt Inc.
1001 SW 5th Avenue, Ste. 2000
Portland, OR 97201-1136
503-224-3092
cnokes@cablehuston.com

## **DEFENDANT SUNFROG'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

### INTRODUCTION

This case concerns SunFrog's sale of $1,465.92 worth of t-shirts that Stay Frosty alleges infringe upon its copyright rights. (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sales Records). Stay Frosty contends that it may proceed with a claim for copyright infringement on an unregistered work and that it is eligible to receive statutory damages and attorneys' fees for works that achieved copyright registration after SunFrog allegedly began infringing upon its works. Further, Stay Frosty alleges that it can proceed with a claim for copyright infringement for works that were uploaded to SunFrog's website by third-parties but never sold, printed, or shipped by SunFrog. SunFrog asserts that, as to these theories of liability and damages, Stay Frosty has failed to state a claim upon which relief can be granted and judgment is proper as a matter of law. To that end, SunFrog moves and respectfully requests that the Court dismiss Stay Frosty's claims as a matter of law.

### FACTS

Plaintiff Stay Frosty Enterprises, LLC ("Stay Frosty") is a limited liability company organized under the laws of the State of Oregon. (P's Compl. ¶ 1). Stay Frosty is in the business of designing original works of art for apparel and merchandise, such as coins, posters, and other items primarily marketed through the Internet. (P's Compl. ¶ 1).

Defendant SunFrog, LLC ("SunFrog") is a limited liability company organized under the laws of the State of Michigan. (P's Compl. ¶ 5). SunFrog provides an online service through which users may sign up for an account, upload a design, and have that design printed on various merchandise, such as t-shirts, sweatshirts, and coffee mugs. (D's Answer Exhibit 1, Declaration of Carol). Users who upload their designs to the SunFrog website may then either purchase these

physical products directly from SunFrog or offer them for sale to third parties. (D's Answer Exhibit 1, Declaration of Carol). If a third-party purchases a t-shirt through the SunFrog website, SunFrog facilitates the transaction and retains a portion of the purchase price as its service fee. (D's Answer Exhibit 1, Declaration of Carol). SunFrog does not create, upload, or curate the user-generated designs listed on its website, and it has adopted a process to expeditiously respond to notifications of claimed infringement and to terminate repeat infringers. Upon notification from a rights holder, SunFrog reviews the notification to ensure that the claim is valid and, if it is, removes the allegedly infringing design form its website. (D's Answer Exhibit 1, Declaration of Carol). All users who upload designs to SunFrog's website warrant that the designs do not violate any intellectual property rights, and SunFrog reserves the right to terminate and does terminate users upon violation of these terms. (D's Answer Exhibit 1, Declaration of Carol).

Stay Frosty asserts that it is the holder of copyright rights in various graphical designs. (P's Compl. Table 1). Stay Frosty asserts on information and belief that SunFrog has made "sales of sweatshirts and tee shirts bearing federally registered works of visual art that are owned by Plaintiff… without consent (sic) permission or authorization." (P's Compl. ¶ 105). Stay Frosty asserts that SunFrog has violated its rights in thirteen designs:

1. "Sniper – One Shot One Kill";
2. "US Veteran — It Cannot be Inherited";
3. "Navy Snipes a Gang";
4. "Navy Jolly Roger";
5. "Corpsman EST 1898";
6. "Navy Jolly Roger Iyaoyas";
7. "Navy Snipes";
8. "Navy Submarine Force Grim Reaper";
9. "Jolly Roger — Sea is Ours";
10. "Navy Rate";
11. "Navy Chief — Tried Tempered and Trued";
12. "Seabees"; and
13. Vietnam Veteran Dragon."

(P's Compl. ¶ 118). Stay Frosty alleges that it has "lost substantial revenue from Defendant SunFrog's unlawful and willful copying of Plaintiff's copyrighted works" and seeks statutory damages and attorneys' fees for these alleged wrongs. (P's Compl. ¶¶ 119, 216).

Prior to the filing of this motion, Stay Frosty provided SunFrog with a list of links evidencing the products that Stay Frosty alleges infringe upon its copyright rights. (D's Answer Exhibit 3, List of Links). Upon receiving this list, SunFrog provided Stay Frosty with its sales records for the products reflected in Stay Frosty's links. (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sale Records). These sales records are a complete and accurate list of the gross sales of SunFrog attributable to the works identified by Stay Frosty. (D's Answer Exhibit 1, Declaration of Carol). These records show that SunFrog received $1,140.13 in gross sales from merchandise bearing Stay Frosty's "Navy Jolly Roger" design, $39.00 in gross sales from merchandise bearing Stay Frosty's "Navy Snipes a Gang," $141.88 in gross sales from merchandise bearing Stay Frosty's "US Veteran It Cannot Be Inherited," $22.99 in gross sales from merchandise bearing Stay Frosty's "US Navy Snipe," and a total of $121.92 in gross sales for three unregistered works (collectively, "Unregistered Works"): ( SunFrog SKUs 313062960, 313063057, 313063132, and 82226633) (collectively, "Sold Works"). (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sale Records). SunFrog has not sold merchandise bearing the other works alleged in Plaintiff's Complaint ("Unsold Works"). (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sale Records).

"Navy Jolly Roger" was first uploaded and published on the SunFrog website on August 22, 2015. (D's Answer Exhibit 1, Declaration of Carol). Stay Frosty alleges that "Navy Jolly Roger" is the subject of copyright registration VA 1-997-320, which lists a first publication date of January 1, 2007 and has an effective registration date of December 31, 2015. (P's Compl. Table 1, Exhibit B). "Navy Snipes a Gang" was first uploaded and published on the SunFrog

website on December 12, 2015. (D's Answer Exhibit 1, Declaration of Carol). "Navy Snipes a Gang" is the subject of copyright registration VA 2-071-327, which lists a first publication date of January 1, 2014 and has an effective registration date of June 28, 2017. (P's Compl. Table 1, Exhibit B). "US Veteran It Cannot Be Inherited" was first uploaded and published on the SunFrog website on December 9, 2016. (D's Answer Exhibit 1, Declaration of Carol). "US Veteran It Cannot Be Inherited" is the subject of copyright registration PA 2-012-449, which lists a first publication date of November 5, 2015 and has an effective registration date of November 5, 2015. (P's Compl. Table 1, Exhibit B). "US Navy Snipe" was first uploaded and published on the SunFrog website on October 17, 2017. (D's Answer Exhibit 1, Declaration of Carol). "US Navy Snipe" is the subject of copyright registration VA 1-997-312, which lists a first publication date of January 6, 2016 and has an effective registration date of January 7, 2016. (P's Compl. Table 1, Exhibit B).

| Title | Copyright Reg. No. | Date of First Publication | Date of Registration | Date Posted on SunFrog.com | Eligible for Statutory Damages |
|---|---|---|---|---|---|
| Navy Jolly Roger | VA 1-997-320 | 01/01/2007 | 12/31/2015 | 08/22/2015 | No |
| Navy Snipes a Gang | VA 2-071-327 | 01/01/2014 | 06/28/2017 | 12/12/2015 | No |
| US Veteran It Cannot Be Inherited | PA 2-012-449 | 11/05/2015 | 11/05/2015 | 12/09/2016 | Yes |
| US Navy Snipe | VA 1-997-312 | 01/06/2016 | 01/07/2016 | 10/17/2017 | Yes |

## LEGAL STANDARD

Pursuant to Rule 12(c), "[a]fter the pleadings are closed-but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach*

*Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (*citing Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984)). The factual allegations of the non-moving party must be accepted as true. *Id*. (*citing Doleman*, 727 F.2d at 1482). When Rule 12(c) is used to raise the defenses of failure to state a claim, a court may grant the motion "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In considering a motion for judgment on the pleadings the court may not rely on evidence outside of the pleadings. *Hal Roach Studios*, 896 F.3d at 1550. If outside evidence is considered, the motion should be treated as a motion for summary judgment. *Id; also Fed. R. Civ. P. 12(d)*.

Rule 12(d) states, "[i]f, on a motion under rule… 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Where the nonmoving party bears the burden of proof at trial on a dispositive issue, summary judgment may be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file, and, pursuant to Rule 56(e), the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Thus, were the nonmovant is unable to do so, summary judgment is proper in favor of the moving party.

    **a. Defendant cannot proceed with a claim for infringement of the Unregistered Works because it has not sought or obtained registration of those works.**

It is axiomatic that, under 17 U.S.C. § 411, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Though Defendant has requested

compensation from SunFrog for its alleged infringement of the Unregistered Works, Plaintiff has not applied for or obtained copyright registration for the Unregistered Works.

Consequently, Defendants seek dismissal of Plaintiff's copyright infringement claim to the extent it seeks redress related to the Unregistered Works. *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir. 2010) (discussing the 9th Circuit's adoption of the application approach to determining registration under the Copyright Act). Since Plaintiff has failed to plead that it holds a registration for the Unregistered Works, Plaintiff's claims must be dismissed with prejudice as to those works as a matter of law.

> **b. Defendant cannot proceed with claims for statutory damages as to the Unregistered Works or for those registrations granted after infringement started.**

Pursuant to 17 U.S.C. § 412,

> no award of statutory damages or of attorneys' fees, as provided by sections 504 and 505, shall be made for—
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after first publication of the work.

Plaintiff seeks a statutory damages award against Defendant, as well as attorneys' fees. (P's Compl. ¶ 216) ("Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, statutory damages, attorneys fees and costs, or any combination thereof."); *see also* (P's Compl. Prayer for Relief) ("Order that each Defendant be required to pay Plaintiff statutory damages, pursuant to 17 U.S.C. §504(c).").

Defendant admits that Plaintiff's "Navy Snipes a Gang" was first published on the SunFrog website on December 12, 2015. (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sales Records). According to Plaintiff's registration certificate, "Navy Snipes

a Gang" was first published on January 1, 2014. (P's Compl. Exhibit B). The effective date of Plaintiff's registration for "Navy Snipes a Gang" is June 28, 2017. (P's Compl. Exhibit B). Therefore, Plaintiff's "Navy Snipes a Gang" is ineligible for both statutory damages and attorneys' fees because Defendant's alleged infringement commenced after the first publication of the work and registration was made greater than three months after the first publication of the work. Defendant also admits that Plaintiff's "Navy Jolly Roger" was first published on the SunFrog website on August 22, 2015. (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sales Records). According to Plaintiff's registration certificate, "Navy Jolly Roger" was first published on January 1, 2007. (P's Compl. Exhibit B). The effective date of Plaintiff's registration for "Navy Jolly Roger" is December 31, 2015. Consequently, "Navy Jolly Roger" is also ineligible for both statutory damages and attorneys' fees. Consequently, Plaintiff's claim for statutory damages and attorneys' fees must be dismissed, or, in the alternative, stricken, as a matter of law. *See Beijing Ciwen Film and Television Production Co. v. New Tang Dynasty*, 2014 WL 12614473, fn 3 (C.D. Cal. 2014) ("Courts have dismissed claims for statutory damages and attorneys' fees under the Copyright Act on motions to dismiss."); *Kent v. Universal Studios, Inc.*, 2008 WL 11338293 (C.D. Cal. 2008) (granting motion to dismiss and stating, "[a]ttorneys fees and statutory damages are not available under the Copyright Act because Kent did not register his work until after the alleged infringement commenced."); *Vivo Per Lei, Inc. v. Bruchim*, 2012 WL 13012883 (C.D. Cal. 2012) (dismissing/striking attempt to pursue statutory damages and/or attorney's fees).

Similarly, Plaintiff's Unregistered Works are not eligible for statutory damages or attorneys' fees because Plaintiff did not obtain a registration certificate prior to infringement. *Akar, Inc. v. Foreign Exchange*, Inc., 2009 WL 10673204 (C.D. Cal. 2009) ("The Court agrees with Defendants that, as a matter of law, Akar cannot seek statutory damages based on alleged

infringement of an unregistered copyright."). For this reason, any claim to statutory damages or attorneys' fees purportedly arising out of the Unregistered Works must be barred.

> 2. **Dismiss claims for un-printed works as prohibited by the DMCA safe harbor and for failure to allege facts getting around DMCA.**

Stay Frosty has asserted that SunFrog may be held liable for copyright infringement for works that were uploaded to its website by its users and that were not ultimately printed or sold by SunFrog (the Unsold Works). More specifically, paragraphs 106-107 and 110-118 of Stay Frosty's Complaint describe various designs alleged to have been created and copyrighted by Stay Frosty that have not been printed on merchandise or sold by SunFrog. (P's Compl. ¶ 106-07, 110-18); (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sales Records). SunFrog asserts that, to the extent that it has not printed or sold the designs alleged to have been infringed by Stay Frosty, Stay Frosty's claims are precluded as a matter of law because it has failed to allege that SunFrog did not act expeditiously to remove those items from its website upon receiving a proper notice under the Digital Millennium Copyright Act.

Section 512 of the Digital Millennium Copyright Act ("DMCA") grants a safe harbor from copyright liability for service providers, which are defined as "provider[s] of online services or network access, or the operator[s] of facilities therefore." 17 U.S.C. §§512(c),(k)(1)(B). Under the DMCA, service providers cannot be held monetarily liable "by reason of… storage" of infringing material at the direction of a user, as long as they "have no specific knowledge that the material is infringing, and as long as they take expeditious action to remove infringing content upon receiving a complaint." *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, No. 2:16-CV-04587-SVW-KS, 2017 WL 2729584, at *5-6 (C.D. Cal. May 1, 2017) (quoting 17 U.S.C.§ 512(c)(1)(A)). To be eligible for the DMCA's safe harbor, a service provider must show that it "did not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. §

512(c)(1)(B). A service provider must also show that it has implemented a policy that provides for the termination of repeat offenders and that it "accommodates and does not interfere with standard technical measures" used by copyright owners to "identify and protect their copyrights." 17 U.S.C. § 512(i)(1).

To be eligible for this safe harbor, a defendant must first establish that it is a service provider, which is defined as "a provider of online services or network access, or the operator[s] of facilities therefore." 17 U.S.C. § 512(k)(1)(B). This definition of "service provider" is considered by courts to be very broad, and prior courts examining this issue have remarked that "it is difficult to imagine any online service that the definition would not encompass." *Zazzle* at *6. *Zazzle*, a print on demand provider with a business model identical to SunFrog, has been found to be a service provider under the DMCA. *Id*. at *7. Other websites that host user-uploaded images and videos have also been found to fall under the definition of "service provider." *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1016 (9th Cir. 2013) (finding Veoh.com to be a service provider); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39 (2nd Cir. 2012) (finding YouTube to be a service provider); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 727, 744 (S.D.N.Y. 2012) (finding Photobucket to be a service provider).

Here, SunFrog is clearly a service provider. SunFrog, like *Zazzle*, provides third-party users with the ability to upload their created designs to be printed on t-shirts and other clothing items and merchandise. (D's Answer Exhibit 1, Declaration of Carol); (P's Compl. ¶ 5) (describing SunFrog as "engaged in the business of selling, advertising, marketing, printing and shipping clothing orders for products, primarily via the internet, bearing designs"). SunFrog did not upload or publish the Unsold Works on its website; SunFrog has provided its service to third

parties and the Unsold Works were uploaded and offered for sale through its website by those third parties. (D's Answer Exhibit 1, Declaration of Carol).

Second, a service provider may not take advantage of the DMCA's safe harbor if it has "actual knowledge that the material or an activity using the material on the system or network is infringing," or, if "in the absence of such actual knowledge," it is "aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(i)-(ii). Courts have remarked that the "constructive knowledge clause has been construed so narrowly in the Ninth Circuit that it is questionable whether it retains any independent meaning." *Zazzle* at *7 (*citing Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1101, 1114 (9th Cir. 2007)). Under this test, a "service provider will not be found to have knowledge of infringement unless (1) the copyright holder submits a complaint that complies with the DMCA's procedural requirements…; or (2) a third-party submits a sufficiently specific complaint about potential infringement." Zazzle at *7 (*citing UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1025) (9th Cir. 2013).

Stay Frosty has failed to plead, and cannot provide evidence, that SunFrog had specific knowledge of particular infringing activity and failed to take action. Instead, SunFrog acted expeditiously to remove any content identified by Stay Frosty as infringing. (D's Answer Exhibit 1, Declaration of Carol). Therefore, such knowledge cannot be imputed to SunFrog to deny it safe harbor under the DMCA.

Third, to be eligible for the DMCA's safe harbor, a service provider must show that it "did not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B). In *Zazzle*, Zazzle was found to have received a financial benefit from the sale of

merchandise when it sold physical products bearing images uploaded by its third-party users. *Zazzle* at *7.

SunFrog has admitted that it received a financial benefit from the sale of the Sold Works uploaded by users to its website and that it had the right and ability to control the sale, printing, and delivery of the Sold Works to third parties. (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sales Records). For the Unsold Works, which were never sold, printed, or shipped to third parties, SunFrog received no financial benefit, and it had no right or ability to control them, nor has Stay Frosty made such an allegation in its Complaint. (D's Answer Exhibit 1, Declaration of Carol); (D's Answer Exhibit 2, Sales Records). As examined in *Zazzle*:

> A service provider will not be found to have "the right and ability to control" infringing activity simply because it has the general ability to remove infringing material and terminate the accounts of repeat infringers. (Citation omitted). Nor does "limited monitoring… for 'apparent' infringements" amount to such a right. Rather, the service provider will not be found to have the right and ability to control the activities of its users unless it exerts "substantial influence" over these activities. (Citation omitted). Such influence will be found where the service provider plays an active role in selecting, monitoring, or marketing user content.

*Zazzle* at *7. SunFrog receives no financial benefit when users upload designs to its website and do not sell them, and Stay Frosty has not alleged and cannot prove that SunFrog exerted "substantial influence" over the activities of its users or played an active role in selecting, monitoring, or marketing user content. (D's Answer Exhibit 1, Declaration of Carol). Zazzle makes clear that the sale, printing, and delivery of the Sold Works "does not preclude [SunFrog] from invoking § 512(c) with respect to images that were displayed on its website but never printed on physical products." *Zazzle* at *8. For these reasons, Plaintiff's claims related to the Unsold Works are barred by the immunity provided by § 512 of the DMCA and must be dismissed as a matter of law because there is no genuine issue of material fact that Defendant is eligible for the safe harbor of 17 USC § 512, the Digital Millennium Copyright Act, because it is

an online service provider and Plaintiff did not engage in the required "notice and takedown" process.

## CONCLUSION

For the foregoing reasons, SunFrog respectfully requests that the Court grant judgment on the pleadings as to: (1) Stay Frosty's request to proceed with a claim for copyright infringement on unregistered works; (2) Stay Frosty's request to obtain statutory damages and attorneys' fees for works that have not achieved copyright registration, are not subject to a copyright application, or that achieved copyright registration after SunFrog allegedly began infringing upon its works; and (3) Stay Frosty's request to proceed with copyright claims for unsold goods, which are barred under the Digital Millennium Copyright Act as a matter of law.

Respectfully submitted this _14 day of February, 2019.

> SunFrog, LLC
>
> By: _/s/ David Madden_____
> David H. Madden (080396)
> Mersenne Law
> Local counsel for SunFrog, LLC
> 9600 SW Oak Street, Ste. 500
> Tigard, OR 97223
> 503-224-3745
> dhm@mersenne.com
>
> John Di Giacomo (pro hac vice)
> Eric Misterovich (pro hac vice)
> Revision Legal, PLLC
> Lead counsel for SunFrog, LLC
> 444 Cass St. Suite D
> Traverse City, MI 49684
> 231-714-0100
> john@revisionlegal.com
> eric@revisionlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2019, I electronically filed the foregoing Memorandum in Support of Motion for Judgment on the Pleadings by using the ECF system which has provided notice to all attorneys of record.

Dated: February 14, 2019　　　　　　　By:   /S/ JOHN DI GIACOMO
　　　　　　　　　　　　　　　　　　　　John Di Giacomo (pro hac vice)
　　　　　　　　　　　　　　　　　　　　Eric Misterovich (pro hac vice)
　　　　　　　　　　　　　　　　　　　　Revision Legal, PLLC
　　　　　　　　　　　　　　　　　　　　Lead counsel for SunFrog, LLC
　　　　　　　　　　　　　　　　　　　　444 Cass St. Suite D
　　　　　　　　　　　　　　　　　　　　Traverse City, MI 49684
　　　　　　　　　　　　　　　　　　　　231-714-0100
　　　　　　　　　　　　　　　　　　　　john@revisionlegal.com
　　　　　　　　　　　　　　　　　　　　eric@revisionlegal.com

## **CERTIFICATE OF COMPLIANCE WITH LR 7-1**

I hereby certify that, consistent with LR 7-1, I attempted to meet and confer with opposing counsel concerning the relief requested by this motion on February 5, 6, 7, 8, and 11, 2019, but opposing counsel refused to meet and confer.

Dated: February 14, 2019      By:   /S/ JOHN DI GIACOMO
                                                   John Di Giacomo (pro hac vice)
                                                   Eric Misterovich (pro hac vice)
                                                   Revision Legal, PLLC
                                                   Lead counsel for SunFrog, LLC
                                                   444 Cass St. Suite D
                                                   Traverse City, MI 49684
                                                   231-714-0100
                                                   john@revisionlegal.com
                                                   eric@revisionlegal.com