Daniel DiCicco, OSB # 073730
205 SE Spokane St Suite 300
Portland OR 97202
v: 503.967.3996
e: dan@diciccolegal.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **STAY FROSTY ENTERPRISES LLC,** an Oregon Limited Liability Company, | Case No. 3:18-cv-00283-SB |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS** |
| **AMAZON.COM, INC et al** | |
| Defendant. | |

## RESPONSE

Defendant SunFrog has moved this court for judgment on the pleadings. In doing so, it has presented evidence to the court outside of the pleadings in the form of a sworn declaration of SunFrog's in-house counsel (D's Answer Ex. 1), sales figures (*Id*. Ex. 2), and communications between the parties (*Id*. Ex. 3). This transforms SunFrog's motion into one for summary judgment pursuant to FRCP Rule 12(d).

Taking the evidence in the light most favorable to the non-moving party is a difficult task for the court when none of Plaintiff's evidence yet exists in the record. The

declaration of Todd Gilbert, CFO of Stay Frosty Enterprises, LLC, therefore accompanies this response. This declaration amply demonstrates that genuine issues of material fact exist as between the parties regarding Plaintiff's complaint. However, Defendant SunFrog raises several key legal issues that the court can resolve presently, including final disposition of SunFrog's affirmative defenses.

## UNREGISTERED WORKS

In section 1(a) of its motion, SunFrog alleges that "Defendant cannot proceed with a claim for infringement of the Unregistered Works because it has not sought or obtained registration of those works." The Defendant would be absolutely correct were its premise accurate. However, Plaintiff has not pled for relief pertaining to any Unregistered Works. Paragraphs 106 *et seq.* of the Complaint identify thirteen registered or pending copyrights infringed upon by SunFrog and zero unregistered works. Therefore, it is unclear exactly what relief SunFrog is seeking. This portion of its motion should be denied.

SunFrog further claims in section 1(b) of its motion that "Defendant cannot proceed with claims for statutory damages as to the Unregistered Works or for those registrations granted after infringement started." Plaintiff reiterates its above position that it is not seeking relief for infringement related to any Unregistered Works and thus SunFrog's request for relief on this point is moot. SunFrog's concerns regarding the timing of registrations requires more discussion.

## PRE- AND POST-REGISTRATION INFRINGEMENTS

SunFrog identifies the "Navy Jolly Roger" design as being first published on the SunFrog website on August 22, 2015 and objects to Plaintiff's complaint for statutory damages because the copyright registration for that design was not effective until December 31, 2015. When we examine the exhibit cited by SunFrog, we can indeed

see a shirt incorporating the Navy Jolly Roger design as having been uploaded on that date. (D's Answer Ex. 2). However, scrolling to the next page of the same exhibit shows a very different t-shirt design that also incorporates the Navy Jolly Roger with an upload date of November 7, 2016. This creates a legal question that must be resolved by the court.

The legal question is: does the use of an infringing design prior to the effective registration of that design give the infringer a license to incorporate that design into new products following the registration? The 9th Circuit's ruling in *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2009) suggests that the answer turns largely on how separate and distinct the post-registration infringements are.

In *Derek Andrew*, the court expressly addressed the issue of whether § 412 of the Copyright Act bars an award of statutory damages for post-registration infringements when the initial act of infringement occurs prior to the effective copyright registration date. To resolve this issue, the court looked to what it means for an infringement to "commence" as it is used in § 412 of the Copyright Act. The court determined that "the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement." 528 F.3d at 701. The analysis, then, is to determine whether any post-registration infringements were ongoing continuations of the initial pre-registration infringements. If so, then statutory damages and attorney fees are barred; otherwise, the claims can proceed.

In the instant case, it seems clear that the first pre-registration infringing product design is substantially different from the second post-registration product design. While both designs incorporate the copyrighted Naval Jolly Roger element, the second design cannot credibly be considered an "ongoing continuation" of the initial pre-registration infringement given the time-gap in their creation and their very different presentations. Consider the images side-by-side to see their differences:




In *Derek Andrew*, the infringing work was a physical item called a "hang-tag" that had been manufactured and attached to clothing items. The pre-registration and post-registration infringements were essentially the same in all regards – the defendant was attaching these hang-tags bearing the copyrighted design to its clothing items and selling them in stores. Both pre- and post-registration, it was the same actor, the same act, the same design, and there was no time break in the ongoing activity. In the instant, case, however, a time gap of greater than one year between uses and a substantially different post-registration design strongly suggest that this second infringement was not a continuation of the first pre-registration infringement.

SunFrog's position is essentially that it is now immune from infringing upon the Naval Jolly Roger design forever, no matter how they use the design, because of its earlier infringement. This seems at odds with the intent of the Copyright Act. Allowing Stay Frosty's claims related to the second design to proceed seems consistent with the intent of the Copyright Act and with the 9th Circuit's decision in *Derek Andrew*.

As to the US Navy Snipes design, SunFrog's argument is well-taken. Because the copyright registration was not effective until after the initial infringement, statutory damages and attorney fees should be unavailable for this design.

Page 4 – PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

## DISPOSITION OF AFFIRMATIVE DEFENSES & LIABILITY

SunFrog has asked the court to issue a judgment on the pleadings, but nothing in the rule states that judgment needs to be favorable to the moving party. With SunFrog's filing of its motion for summary judgment, SunFrog has clearly stated its position that its pleadings are thorough, complete, and supported by a record sufficient to move to ultimate disposition due to a lack of genuine factual disputes. However, an analysis of SunFrog's answer and evidentiary records reveals fatal flaws in SunFrog's pleadings and affirmative defenses that justify immediate adjudication.

When a moving party has made a motion for summary judgment, this court has the discretion to grant summary judgment in favor of an opposing party inasmuch as the moving party is aware that the issue has been raised. *Employers Ins. of Wasau v. Petroleum Specialtis, Inc.,* 69 F.3d 98 (6th Cit. 1995). The moving party is considered to have sufficient notice of "the imminence of summary judgment in some form." *Markva v. Haveman*, 168 F.Supp.2d 695, 706 (E.D. Mich. 2001), aff'd 317 F.3d 547 (6th Cir. 2003). See also *Salens v. Tubbs*, 292 F.App'x 438, 441 (6th Cir. 2008) (affirming the district court's discretionary decision to grant summary judgment in favor of the nonmovant). While rare, the above-cited cases demonstrate several examples of a moving party pleading itself right out of court by filing a motion for summary judgment when the evidence in the record demanded a result quite opposite to the moving party's intentions. Thus, as the court will see through an examination of each of SunFrog's affirmative defenses, adjudication and disposition of these defenses is permitted, appropriate, and serves the interests of judicial economy.

Affirmative defense 1 argues that the Plaintiff has failed to state a claim upon which relief can be granted, which is essentially the same as a Rule 12(b)(6) motion to dismiss. "The purpose of a motion to dismiss under rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th

Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. FRCP Rule 8(a) states that a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construes them in the light most favorable to the non-moving party." *Parks Sch. Of Bus. V. Symington,* 51, F.3d. 1480, 1484 (9th. Cir. 1995).

Plaintiff submits that its complaint sufficiently describes a pattern of direct copyright infringement by the Defendant wherein the Defendant advertises, manufactures, and sells apparel bearing the registered copyrighted artwork of Plaintiff. Each of the infringing works is identified by name with an accompanying color image of the infringing works as they appeared on the defendant's web-based store. Plaintiff has provided prima facie proof of its ownership of the registered copyrights by filing with the complaint the various certificates of registration for the works. On its face, the complaint is easy to understand with regards to its allegations. As a result, the court can and should make a judgment on the pleadings rejecting Affirmative Defense 1.

Affirmative Defense 2 we believe is moot because Plaintiff is not seeking any relief for infringements to unregistered works.

Affirmative Defense 3 – that "Defendant may not be held liable as pled because Defendant is protected as a service provider under the Digital Millennium Copyright Act" – fails for a number of reasons. First, and quite simply, being a "service provider" under the DMCA entitles a company to nothing in and of itself. Asserting that SunFrog is a service provider under the DMCA asserts that it is "a provider of online services or network access." 17 USC § 512(k)(1)(B).

It is conceivable the SunFrog wished to assert that it qualifies for a Safe Harbor as defined in the DCMA – which it most emphatically did not do. However, even if it had, the claim would fail because the facts in the record are insufficient to support the claim. The DMCA at 17 USC § 512 describes three "safe harbors" available to online service

providers. Subsection (c) describes a safe harbor for "information residing on systems or networks at the direction of users." At subsection (c)(2), the safe harbor's limitations on liability are restricted only to service providers that have "designated an agent to receive notifications of claimed infringement" and made that information available to the public and registered that agent with the Copyright office. No evidence exists in the record to prove this fact. Affirmative Defense 3 therefore fails on two distinct grounds and should be rejected.

Regarding SunFrog's claim that Stay Frosty has failed "to allege facts getting around the DMCA," SunFrog confuses the duties of the parties in asserting claims and defenses. The DMCA safe-harbor provisions represent an affirmative defense to be pleaded and proved by SunFrog. *Mavrix Photographs, LLC v. LiveJournal Inc.,* 853 F.3d 1020, 1027 (9th Cir. 2017). SunFrog discusses the various theories under which it might achieve DMCA safe harbor protections but none of these theories engages with the sufficiency of Plaintiff's pleadings and indeed presuppose that SunFrog has properly raised and proven a safe harbor defense, which it has not done.

Affirmative Defense 4 – that SunFrog did not have any specific knowledge of infringement – is not a legal or equitable defense. The defense seems to be invoking language that appears in the DMCA, but on its own, the defense fails to state any theory under which SunFrog could defend against Stay Frosty's claims.

Affirmative Defense 5 – that Stay Frosty lacks standing – this defense again lacks any evidentiary basis in the current record. The declaration of Todd Gilbert states that Stay Frosty owns the copyrights. No evidence rebuts this and the defense can proceed to immediate disposition.

Affirmative Defense 6, relating to pre- and post-registration infringements, can be adjudicated presently based on the evidence and arguments discussed above.

Affirmative Defense 7 – that the assignment of Copyrights to Stay Frosty lacks consideration – again is submitted without argument or evidence and can proceed to

immediate disposition.

Affirmative Defense 8 – that the doctrine of laches applies – is submitted without argument or evidence and can proceed to immediate disposition.

While the outcome of this affirmative defense analysis is unquestionably odd, it was not Stay Frosty that asserted no genuine issue of material fact exists as to the matters in the pleadings. Stay Frosty wants to take discovery and litigate. However, given SunFrog's aggressive request for the court to consider all of the evidence before it and render a judgment on the pleadings – we can only look at the dearth of evidence supporting SunFrog's position and consent. The court should absolutely make a judgment on the current pleadings and evidentiary record. It should allow Stay Frosty's claims to proceed because there is a genuine issue of material fact, and it should adjudicate all of SunFrog's affirmative defenses because there are no genuine issues of material fact.

In fact – incredibly – this court can and should enter summary judgment for plaintiff on each of its claims for liability because no genuine issue of material fact exists related to the advertising and offering for sale of the artworks identified in Stay Frosty's complaint. SunFrog's answer admits that the artworks were uploaded to the SunFrog website in paragraphs 106-117. The Declaration of Carol, SunFrog's legal counsel, further confirms that each of the infringing items appeared on the SunFrog website and that it "reviewed the links and pulled all sales records concerning the products reflected at those links." (D.'s Answer Ex. 1, para 12 etc).

If the court disposes of the inadequate defenses raised by SunFrog, then the only matter in dispute as between the parties is whether the artwork offered on SunFrog's website is substantially similar to Stay Frosty's artwork. The court can make this determination as matter of law by simply looking at the artworks side by side. Compare the images in Stay Frosty's complaint at paragraph 106-117 with the images contained in Exhibit A to Stay Frosty's complaint.  The images are not just substantially

similar – in most cases, they are exactly the same. Because no genuine issue of material fact exists as to similarity, the court can and should enter summary judgment on this point.

## DMCA SAFE HARBORS & UNSOLD WORKS

If the court does not agree with our analysis related to the insufficiency of SunFrog's pleadings in attempting to raise an affirmative defense, then the court should withhold ruling on this issue until discovery has been taken pursuant to FRCP 56(d). The attached declaration of Daniel DiCicco supports this request.

Proper adjudication of this case requires the court to have a comprehensive understanding of what it is exactly that SunFrog does to make money. The statement provided by SunFrog's in-house counsel is entirely accurate while also being misleadingly incomplete. To begin, SunFrog's entire business model is built upon selling artwork that it actively solicits individuals to upload to its website. Its singular goal is for an internet user to provide content to SunFrog so that SunFrog can sell t-shirts bearing that content. It doesn't just host and display the artwork uploaded by internet users – it actively attempts to sell that artwork using an extremely sophisticated web portal that integrates with Facebook, Amazon, and other marketing channels.

At its height, SunFrog received over 150,000 new t-shirt design submissions *per day*, growing its annual revenue to more than $100m. During this rapid growth explosion, SunFrog was forced to grapple with rampant counterfeiting and copyright infringement. The number of bad actors exploiting the SunFrog website to sell infringing material and the sophistication of those bad actors has gotten SunFrog in trouble over and over and over and they simply have not been able to cope with the scale of the problem. Evidence exists – and indeed, court rulings against SunFrog specifically exist – showing that SunFrog has taken the "ostrich defense" approach to combating intellectual property infringements: it has buried its head in the sand and exercised

Page 9 – PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

willful blindness to the problem.

In broad strokes, we believe that SunFrog simply cannot claim the protections of the Digital Millennium Copyright Act at all. The facts supporting this theory can be made available to Stay Frosty and we know how and where to develop these facts but only if we have the benefit of taking discovery. We know these facts because they were all proven in the very recent case of *H-D USA LLC et al v. SunFrog LLC et al* (unpublished to the best of my knowledge, but attached to this memorandum). We strongly encourage the court to read the attached opinion granting summary judgment against SunFrog to shed light upon the scope of the evidence we intend to develop in discovery.

Among the many incredible insights into SunFrog offered by the Harley Davidson case, one clear takeaway is that SunFrog heavily advertises its products on Facebook, Amazon, and social media. Stay Frosty knows for an absolute certainty that at least some of the "Unsold Works" referenced here by SunFrog appeared in SunFrog Facebook ads. This use of Unsold Works in advertisements listed outside of the SunFrog website would completely preclude any DMCA protections. Thus, a full accounting of which works have been used in advertising is critical to a fair resolution of this matter and only SunFrog can provide that information.

Furthermore, even though SunFrog has removed various Stay Frosty works in response to takedown notices, we have disputes over the timeliness of the response to those takedowns. Additionally, we have evidence that SunFrog continues to benefit from removed products in several highly technical and less tangible ways even after taking an infringing product down.

We believe at this point that our arguments are moot given the insufficiency of SunFrog's evidence and pleadings. Even so, should SunFrog survive its own motion for summary judgment then ample issues of material fact remain to be litigated.

## CONCLUSION

Given the above arguments and authorities, the court can and should presently dispose of this case by entering summary judgment on all counts in favor of Stay Frosty, with the elements of damages and willful infringement being left open for determination at trial.

## LOCAL RULE 7-1

We note that Defendant's motion did not include a certification that the parties met and conferred prior to the filing of this dispositive motion. No such conference took place, although I did make myself available for one. This is not a major problem, but we remind our out-of-state colleagues that being able to talk on the phone about our dispute may lead us down a path to talking about how to resolve it amicably.

Respectfully Submitted by:

Dated February 15, 2019

*/s/ Daniel DiCicco*
Daniel DiCicco, OSB # 073730
205 SE Spokane St. Suite 300
Portland OR
97202
v: 503.967.3996
e: dan@diciccolegal.com

Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019, I caused a true and correct copy of the foregoing RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS to be served via CM/ECF to all appearing defendants.

s/ Dan DiCicco